And welcome to a virtual session of the United States Court of Appeals for the Eighth Circuit. It's virtual in appearance, but it's definitely actual in terms of the efforts that we're putting in to hear these cases and decide them under our jurisdiction. And so we want to give thanks to all of the technical staff that are working to make this possible. And we want to also extend our thanks to counsel who are doing their part to participate through this means as well. And so we'll continue as if we were actually all in the St. Louis Courthouse. We'll start and begin with the very first case. Madam Clerk, would you call the first case for the morning? 18-3256 Judith Coffey et al v. Commissioner of Internal Revenue. 18-3259 Estate of James Coffey, Judith Coffey Executrix v. Commissioner of Internal Revenue. All right. Ms. Hagley for the commissioner. Yes, good morning and may it please the court, Judith Hagley from the Justice Department representing the commissioner. This case involves a tax avoidance scheme that Congress and the Treasury Department have identified as abusive and took steps to shut down in 2004. In this scheme, a U.S. taxpayer attempts to avoid 90% of the tax due on its U.S. income by papering that income as Virgin Islands income and claiming to be a Virgin Islands resident. The IRS determined that Judith Coffey had engaged in the scheme and was not, in fact, a Virgin Islands resident. The tax court held that even if the IRS's determinations were true, that the IRS could not collect the tax due because the federal statute of limitations had expired. The tax court is wrong. The federal statute of limitations never began. It was never triggered because they never filed a return with the IRS. The 11th Circuit in the Sanders decision addressed the same fact patterns and determined and correctly held that taxpayers like Judith Coffey, taxpayers who we assume are not U.S. Virgin Islands residents, must file a return with the IRS to trigger the federal statute of limitations. Filing a return with the Virgin of a cover over request from the Virgin Islands is not sufficient as the lead opinion. Counsel, let me ask you a question. If a person is a bona fide resident of the Virgin Islands on the last day of 2003, then if they file the one return with the Virgin Islands, you admit, agree, that the statute of limitations runs, right? That is correct. Okay, good. And is it true that in 2004 they were required to be a resident the entire year? Yes, that is correct. So we've got two different standards in this very case, huh? We do, but for purposes of the statute of limitations question before this court, the two different standards do not matter. That's something that will matter. This court remands for a tryout on the residency question. There'll be two different tests for the 2003 year versus the 2004. Counsel, at all relevant times, the statute has said bona fide, right? Correct. Okay, but your instructions always said permanent and non-permanent, right? The instructions to the 1040 use that language. The instructions also direct the taxpayers to read publication 570, which is the guidance for taxpayers who have income from possessions, and that publication uses the phrase bona fide resident. Yeah, it's buried in the 570, in lots of pages of the 570, as you know. But if you just, like any taxpayer, picked up your tax form and filed it and looked on the back, it says the term permanent and non-permanent. The IRS ever define those terms? Not in the instructions, but it's fleshed out in the guidance, which the instructions also direct the taxpayer to use. Does 570 use the term permanent and non-permanent anywhere? No, it uses the phrase, I'm pretty sure, bona fide. I haven't looked at it. I'm guessing here too, but I'm pretty sure too that bona fide's used in the 570, but if you just used your instructions, you're supposed to be looking for permanent, non-permanent. Does that make any difference? It doesn't make any difference. The permanent is the same as the bona fide resident, and the non-permanent is the same as someone who is not a bona fide resident. Yeah, but you never said that. You never told anybody that in any way, right? These taxpayers had advisors, and advisors would- Oh, oh, oh, oh, oh. So now we're going on whether the taxpayer has a fancy lawyer or non-fancy lawyer. Let's don't go there. Now, it's true that the return they filed with the IRS that you eventually got the first two pages of is at 1040 like everybody files, right? In all due respect, that portion of the Virgin Islands return that was sent in the cover request was not actually filed. No, counsel, I'm not talking about the cover request. I'm talking about the first two pages of the 1040. The first two pages of 1040 are the same, right? They are the same, but that was the cover of a request that came from the Virgin Islands and purported to be part of the Virgin Islands return. It was not sent to the IRS by the taxpayer. It was the taxpayer's obligation to file his return with the IRS. I know of no case where a return has been filed for a taxpayer by someone other than the taxpayer or the taxpayer's agent. The language- Go slowly. Go slowly. You say you know of no other case where it's filed with all these third-party providers all filing them all over the country? Can you say that with a straight face? Those third-party providers are acting as the taxpayer's agent. But you don't know that from the face of the return, counsel. You have no clue from the face of the return. No, but you know from the way that it comes into the IRS. There's no... Look at it this way. With the cover of a request, we know that it's not from the taxpayer. We know that it's from the Virgin Islands and it's the U.S. Virgin Islands did not send this into the IRS to satisfy the federal filing requirement. As the taxpayer found here on page 18 of the addendum, it was sent in so that the Virgin Islands could obtain revenue that the service was holding. The taxpayer and the proceeding below made the same point that that is the purpose of the cover of a request. That was on page 1147 of the joint appendix. Nothing in the code or the regulations or any of the guidance in this case equates a cover over document with the filing of a taxpayer's return by the taxpayer. And there's nothing that would have put the IRS on notice that they should treat this cover over request. Now, counsel, go slowly. If you look at the page two, handwritten in there is this EDC credit with the biggest number on the return, 322,000, bigger in life. Now, tell me how that doesn't put you on notice of something. Well, that puts us on notice that this is their Virgin Islands return. You would not claim the EDC credit on a return that purports to be the federal return, return that you file with the IRS. Wait, wait. I thought you were supposed to file the same return two places if you have Virgin Islands source income. Don't you file the same return two places? That's what the statute says. If you are filing under 932A, you file it in two places. And it would be identical, but you would not be claiming the EDC credit because that is only something that you claim. I'm sorry. Well, counsel, you could claim that and file it both places. Be careful. Well, you would be claiming it from the Virgin Islands, not with the United States. Wait, wait, wait. Let me go slowly. Had they simply filed this two places, they would have filed a return inside of the statute of limitations, right? For sure. If the copies had sent a return into the IRS, even if the return had not been perfect, if they had purported to file their U.S. return in the proper place with the IRS, that would have triggered the federal return. But they did not do so. They never filed any document with the IRS, prepared anything with the IRS. And they knew this during the audit that the service was treating them as non-filers. And before they filed the return with the IRS, the IRS had issued guidance. And notice 2004-45 that they were scrutinizing this particular transaction and that taxpayers who filed only with the Virgin Islands would be treated as non-filers and that the non-filing penalty would be imposed, which is in fact what happened in this case on our reply brief page 38. We list all the different ways that these taxpayers were treated as non-filers. I'll let you sound your theme at the beginning, but you waited 18 years to decide that position, right? No, this is, it has always been our position. No, go slowly, Catherine. Go slowly. You put out the notice in 2005 because it was a new position. No, the notice in 2004 was just, prior to the notice, the statute said, if you are a non-U.S. resident, you must file a return with the IRS and with the Virgin Islands if you have Virgin Islands source income. As 11th Circuit held, all prior guidance, all guidance prior to 2007 from the service, the instructions, the publication 570 was consistent with the statute that a non-U.S. resident has a dual filing requirement. The notice, the 2004-45 notice, is just advising taxpayers, warning them that the IRS has identified this particular transaction to be an abusive tax shelter and is scrutinizing it and is penalizing it, including the penalty for failure to file. That is my point, is that the copies, when they chose not to file- Did you claim it was a fraudulent return? No, this is not a fraud. A return can take a position that is abusive, that is an abusive shelter without being fraudulent, and that is the position here. We have not imposed the fraud penalty or suggested that it was a fraudulent return. No, I'm talking about a fraudulent return. As you know, they don't have any statute of limitations. That is correct. If you fail to file a return, there's no statute of limitations. If you file a fraudulent return- The IRS still says six years is as far back they'll go with a non-filer, right? That's in their internal- That is something they do, like a pro-taxpayer position, that generally, even if someone doesn't file a return, will only go back six years, and the notice of deficiency in this case was within that active discretion. Every circuit that has looked at the issue has held that a taxpayer with a dual filing requirement that only files with the possession or a territory and not with the IRS has an open tax year. The 11th Circuit in Sanders, which was addressing the nearly identical fact pattern as here, the Fourth Circuit in the Campbell case, the Sixth Circuit in Robinette, and those were all individual taxpayers, and then on the corporate taxpayer side, the Ninth Circuit and the Condor Division. There is no authority that supports the proposition that if a taxpayer has a dual filing requirement and doesn't file with the IRS, that their statute of limitations will run. The Golston Rule still prevails, right, in the tax court? That's correct. Well, you notice there was almost no citations, there's one or two throwaway citations, to Eighth Circuit cases when this case had been here before. Why do you think that happened? I don't know. Did you cite Eighth Circuit cases to the tax court counsel? Well, I'm an appellate counsel, I didn't file the tax court case. Oh, now that's not a good answer. As you know, you're supposed to know the record. I don't recall whether we cited Eighth Circuit cases. I don't think any of you cited the Eighth Circuit cases. I think you're allergic to them. What's the most guidance we get from our Eighth Circuit cases? We have several. Well, we've cited several cases in our brief that support the proposition that a taxpayer must meticulously comply with their federal requirements, filing requirements, and even if the IRS has information about the taxpayer, that's not the same as filing a return. We cite the Heckman case, Roy Parker, national contracting. Taxpayers and the Virgin Islands rely on this court's Coulson decision, but Coulson doesn't address what is a filing. It addressed the separate question of what is a return. And that the main issue here is whether the taxpayers filed anything with the IRS, and because they did not, they're- Well, counsel, Coulson says that honest and genuine, you know what it says. Yes. And you look on the face of the return to determine whether it's honest and genuine effort to comply. Why isn't this an honest and genuine effort? A couple of reasons. Number one, you have to look, again, the main issue is not whether it's a return, but whether they have satisfied the filing requirements. You have to look outside the face of return to determine whether filing errors have been made. Each of the four circuit opinions that dealt with the dual filing requirements I just mentioned- Well, counsel, you ran away from our cases. Our cases say you look at the face of the return. To determine if something is a return, not to determine whether there has been a filing. In the Heckman case, you looked outside the face of the return to determine whether the taxpayers was under the three-year regime or the six-year filing regime, whether there had been gross income that had been admitted. If the tax return is fraudulent, then the statute of limitations is open. I don't think- Yeah, but she said it doesn't apply in this case, right? It doesn't apply in this case. That is another example of looking outside the face of the return to determine whether the taxpayer has satisfied its filing requirements. The Supreme Court has said that you must meticulously comply with all filing requirements. So even if someone files a return with the IRS, but with the wrong office, you have to look outside the return to determine did they satisfy their filing requirements. And if they didn't get into the correct office, they have not satisfied their filing requirements. The four circuit decision is an example of that. In fact, what we talked about earlier, in that case, the IRS person who takes it first is an agent of the taxpayer in your view, right? Yes. The taxpayer had taken affirmative steps to file its return with the IRS. They filed it with- I'm sorry. You know what I was referring to? You said that they're all filed with the taxpayer or the taxpayer's agent. And I just happened to think in that case, you're saying the IRS employee is an agent of the taxpayer. Implicitly because they're authorized. They've been given a return- Explicitly because it determines the statute of limitations. And I think in that case, because the taxpayer has given the return to the IRS for the purposes of filing, the taxpayer has authorized the IRS to act as its agent to make sure that it gets to the correct office, which is what occurred in Allnett.  Took no steps to file with the federal government. Instead, took the position that they were a bona fide resident. They only had to file with the Virgin Islands. And taxpayers are allowed to do that in our self-assessing tax systems. Taxpayers get to make the initial call. Do I have a filing requirement or not? But if they get that call wrong, they've assumed the risk of their federal statute of limitations is open, which was the case not only in Sanders, but the other dual filing cases that I mentioned. Ms. Heckley, this is Chet Smith. Am I correct in the way I read the record that the commissioner is not challenging whether what was filed was the actual return? Correct. We do not challenge that the return filed with the Virgin Islands qualifies as a return. I believe both the lead opinion and the concurring opinion note that that is not our argument. Our argument is that under the plain language of 932A2, the taxpayer had a dual filing requirement. Was supposed to file not just with the Virgin Islands, but also with the federal government and simply failed to do so. As 11th Circuit held, filing with the Virgin Islands doesn't satisfy the dual filing requirement. And it also recognized that a cover of the request that the service receives does not satisfy the requirement to file with the IRS. Plain language of the statute. In addition, the court correctly relied on the long state. It's been about 100 years, almost 100 years since Lucas was decided that taxpayers must meticulously comply with all filing requirements before the federal statute of limitations can run. And if there's any doubts of what the filing requirement is, it's construed in favor of the government. And the courts enforce this strictly out of recognition of the difficult job the service has. It receives, just from individuals alone, over 150 million returns every single year. It has to keep track of the statute of limitations for each one of those returns. And it is the filing, meticulous filing, of the return that turns on the three-year audit clock running of the statute of limitations. And that just never happens in this case. And the court... Counsel, you're in your rebuttal time. You can continue if you like, or you can reserve. I'll reserve the rest of my time for rebuttal. Thank you. May it please the court, this is Randall Andreozzi. Can everybody hear me okay? Yes, we can hear you. Okay. Your honors, to begin, we appreciate your accommodating us during these times and allowing us to appear remotely. As Judge Benton and Judge Smith know from, I think, about nine years ago, the parties went back when the parties were before the courts fighting over whether the Virgin Islands could be in this case or not. We've been in the tax court struggling through this case. Back then, during that time, the IRS, or the appellant here, based his case below on a fundamental false premise, that a 1040 filed with VIR is not a federally mandated tax return. He said that he had no authority over those returns, no responsibility for them, and absent the USBI's agreement to share that information, he had no possible way to access that. What he said was, look, how in the world could we ever know that a taxpayer filed a return over there? If we can't know that, how in the world can the statute of limitations start? As the years passed, in that tax court case, we were learning through other cases, the IRS, or where we had cases with other EDC participants, about things that were happening in the processing of those cases. As we learned those, we pressed the IRS appellant here to address those issues. What's happened is, in this case, in their reply before this court, they made certain admissions. Now, they admit that first, income tax returns like those here that were filed with the VIIR under 932C are federally mandated returns. They are the returns required to be filed under the IRC, period. They concede also that appellant is authorized to examine those returns filed with the VIIR. And they admit now, at page five of their reply brief, that the appellant, quote, bears responsibility imposed by federal statute with respect to those returns, close quote. He's responsible for examining them and for assessing federal tax liabilities with respect to those, which is akin to what your honors decided or held in your opinion nine years ago. He also admits that to accomplish these objectives and this authorization and responsibility, he's authorized to, quote, access, inspect, classify, and examine individual income tax returns filed with the VIIR. So bottom line is, appellant always had access to the returns in this case. He could go in and classify those at the VIIR offices, just as he does in any of his stateside service centers or campuses. And so let me interrupt you. Appreciate you clarifying where there's agreement. But I noticed that you did not even reply to, and of course, I've already said the tax court ignored the Colson rule in this case. You know, we've been to the Eighth Circuit before, and the tax court has two throwaway citations to Eighth Circuit cases. And so let me ask you, doesn't our Hickman case, that actual knowledge by the service does not matter, doesn't that effectively say we can't go with the first opinion, the one that has fewer votes, in the tax court? And you didn't even comment on Hickman. I don't think the Virgin Islands did either. The service barely did. So doesn't our Hickman case say we cannot follow the main opinion? We believe that the plurality opinion is the correct opinion in this case. Now, with respect to the main opinion, here's the issue there. And I think this gets to your point about knowledge. When Judge Holmes and a government counsel at the time were going through this, in oral argument, non-brief, the one issue was that Judge Holmes said, well, you know about this. You got this cover over return that has all this information. And so isn't this enough to show that the return was, he was giving them their point. Because the government lawyer knew that. He had to say that his only argument was, you have to file this protected zero dollar return. To other state counsel, let me interrupt you. They didn't mention that today. And that's pretty much, if you search the IRS's website, protective returns not there and during the pandemic, they told people not to file protective returns and not to file another return. So that's a pretty bad argument by the government. I'm glad that they didn't mention it today. But now back to you. You don't have to defend the main opinion because I do think Heckman is an insurmountable problem for the, just me personally, for the first opinion. So you're going to defend the plurality opinion, right? I believe that both opinions are correct because Judge Holmes was trying to. OK, well then answer the Heckman case. You've never addressed Heckman, I think. You can tell me that you're not familiar with it. That's fine. Is it the knowledge of the return being filed? Yeah. That was what the IRS find out in a separate audit or something about what the business had done. And we said that didn't start the statute of limitations, which is just like the plurality opinion, the first opinion. Yes. And here, in this case, based on the admissions that I just recited to you, the IRS knew that the returns were filed with the BIBIR when they were filed there. That, it used to be in this case, and it's in here. I'm sorry, your time is going fast and you and I can chase a lot of rabbits on this. So let me ask you this question. If you just look at the structure of the statute, don't we have to know first whether Ms. Coffey, who had the most AGI, don't we have to know whether she was a bona fide resident of the Virgin Islands at the close of one year or throughout all of the other year? Don't we have to know that before we can do anything else? No, your honor. Absolutely not. Why not? My goodness. Because the statute structured that. Let me finish the question. You don't know I'm finishing, but I am. But if the statute structured that if you are a U.S. normal resident, you do this. If you're a Virgin Island resident, you do that. Surely you got to know that first. If you, and your honor, when Ms. Coffey filed her return, she believed that she was a Virgin Islands resident. And so she put that on the return. When she filled out her tax return, it said home address on it. She put her USVI address on it. She claimed an EDC credit on it. Everything screams file this return with the Virgin Islands, which she did. She did exactly what she should have done. And on that point, you know the Appleton case? Yes. Mr. Appleton and Ms. Coffey were similarly situated. So they were both preparing their tax returns around the same time, in the same circumstances, et cetera. In fact, they were both participants in the Stone Tree company that was involved in this case. So Mr. Appleton does what he's supposed to do, files it. Ms. Coffey does what she's supposed to do. And the government now admits that. These returns, our returns under Veer, properly filed based on the information provided. Just so happens that the IRS says, Ms. Coffey, you're not a resident. So your return, poof, disappears. Mr. Appleton, you are a resident. And now he has a return. Bear in mind that the government in Appleton, we were on the Appleton case too, argued that his return wasn't an actual return. Because he didn't satisfy all the requirements of CPOR. Appleton's just a tax court case, right, counsel? Yes, your honor. Yes, your honor. And the in-bank tax court cases control the Appleton case, right? I'm sorry? An in-bank tax court case controls the Appleton case, right? Yes. So he was deemed to be a bona fide resident and his return was accepted now. Now the IRS embraces Appleton. They accept that case. Right. And that's because the government is authorized to audit those cases under CPOR. They're authorized to do that. And based on that, they determined he was a resident, but he flunked the other two elements of CPOR. Here they say Ms. Coffey flunked all of the elements of CPOR and therefore her return disappeared. They cannot have it both ways. By embracing Appleton in this case, they admit where they are with. Do you, despite the length of residency between the two tax years here at issue, only a tax case would have that, the 2003-2004. Do you think that matters at all in this case? Government says it doesn't. You mean whether the last day of the year versus the whole year? Correct. No, it doesn't because the assumption in the tax court was that in order to rule on summary judgments, we wouldn't have to have a residency trial, was that the government determined the taxpayer did not pass residency C4A and that the court would have agreed with the government that they did not pass C4A. That was the presumption there. We would be assuming that the court determined they were not bona fide residents. There's four minutes left. To address a couple of the other points here, the government made those admissions and now they're arguing before this court certain things that seem to disavow those admissions. First, for example, this protective zero dollar return. No, they didn't argue that today, counsel. So we'll ignore that. Yeah, we hope they deserted that. Go ahead. Yes, okay, good. The other thing is they say that the 2008 regs have no bearing on this case, that they're prospective only and that they were only written because the IRS had this, quote, new information sharing agreement with the Virgin Islands. Well, let me say this. The admissions that they now make show that that's false. They've always had access to the returns filed over there. They've always had authority over those. Counsel, I'm interrupting you again. Does the treasurer regulation 1.932, does that get Chevron deference from us? I don't know that it is necessary for it to. I think that's maybe the best point. In other words, the IRS has already admitted. Yeah, but go slowly with me because the treasurer regulation published after notice and comment and everything they always do, it surely gets Chevron deference, right? It's way up there on the Chevron list. Yes, I would agree with that and I know that there's issues the IRS might disagree with that, but the point I'm making is also as a factual matter, as a factual matter, what the admissions are here would cause it to apply there. In the court below, respondents counsel admitted to the court that the statute hasn't moved an inch and that if this interpretation is what the IRS is saying here, there should be no reason why it would not apply in those past years. The only reason it said it did this was because of this new information sharing agreement. I would say that also, it's important to note that Congress, and this is all documented throughout our filings, Congress admonished the IRS when they found out about these positions they were taking in these cases that it ought to be looking at this and not doing that. Now, IRS characterizes those admonitions as just some complaining by a few senators up there. Bottom line is Congress knew what it authorized when it implemented 932. It told IRS and BIR how to do it and that's what all of the MOUs and all of the TIA says how to do it. Last point, an important thing on Sanders. Sanders, in Sanders, the government represented to the court, to the 11th Circuit, that they took that old position that they had no information that the returns didn't enter the, quote, IRS audit machinery. The court bought that and ruled, because of that, the way it did. In Sanders, there was a full trial on residency, though, right? Afterwards, yes. In the Sanders opinion, that last half of it's all about residency, the last half of the opinion. I've not read it carefully, but surely they'd had a trial, but anyway, they said just setting the standards for a later trial. If you don't know, that's okay. I don't know which came first in that case, but whether it was remanded for the trial or not. The last half of the opinion, sure, but we'll check. Hersey, you have just seconds left. That was the point. Finally, again, with regard to the tax court opinion, the last point I'll make is that the court struggled with this case because of the fact that those admissions that I referenced above weren't made. I would submit that that's why you get the lead opinion, the plurality opinion, and the dissent, where the dissent specifically said, we're worried that if they're really not getting these returns, could people be getting away with something? That concern is eliminated based on the admissions the government makes here. Thank you, Mr. Andriozzi. Thank you, Your Honor. Mr. Eaton, I need to unmute your mic. Good morning, Your Honors. Jeffrey Eaton for the government of the Virgin Islands. Your Honors, we asked for a separate time because unlike the taxpayer, we are here for institutional reasons. The government intervened in this case and many others like it in part because it views the position that has been taken by the IRS in this and many similar cases as being grossly inconsistent with the statutory scheme set up by Congress for taxation in the Virgin Islands, Section 932. With the reality of the program of coordination and cooperation between the IRS and our Bureau of Internal Revenue, it is also mandated by that federal regime. The long story short, Your Honors, is that Section 932 is an integrated federal tax regime governing taxation in the Virgin Islands. It contemplates and requires roles for both the IRS and our Bureau of Internal Revenue and expressly requires some taxpayers to file tax returns with the Virgin Islands to satisfy their federal filing requirements. The notion that the IRS has repeatedly emphasized in this litigation, at least until today, that the Virgin Islands is the equivalent of Botswana or England in the federal tax scheme is completely inconsistent with what Congress attempted to do here. We are here in large measure to defend our understanding of 932 as Congress intended it to be implemented. I think, Your Honor, Judge Benton, you were getting at this, I think, a minute ago. Under Section 932, backing up a moment, all we're talking about here is the statutory limitation, which is triggered by a filing of the return that is required to be filed by the taxpayer. There is no question and the IRS now admits that the filing under 932C with the Virgin Islands is required to be filed by the taxpayer. That is a legitimate federal return that can trigger those tax limitations. It's a position they did not agree with for many years, but they've now conceded it. The question then becomes, who are those taxpayers? Who is it that is required to file under Section 932C? I think, as much as we get wrapped around the axle in these cases, for nearly 20 years now, I think if you read the statute carefully, the statute tells us the answer. And here's why. The statute divides the world into two classes of people, right? If you are a person in the Virgin Islands who has Virgin Islands income, or outside the Virgin Islands, but let's assume for the moment that you're someone in the Virgin Islands who has Virgin Islands income, you can do one of two things. There are only two possibilities. You can either take the position that you are not a bona fide resident of the Virgin Islands, in case you file with the IRS. You can take the position that you are a bona fide resident of the Virgin Islands, and you can file with the BIR. You cannot- Counsel, let me interrupt you. You put the IRS's magic words, take the position. As you know, that's their position now, since under the 2008 reg, it wasn't their position before, you know. I do understand. Take the position part that you've added to that. No, I understand. Forgive me. Don't you think the requirement for the benefit of your program, and for the benefit of the Virgin Islands, don't you think you first need to know whether somebody is or is not a Virgin Island resident? The problem is, your honor, there's no way to know that ex-ante. You need a residency trial to solve that problem, which means a taxpayer in the position of, where do I file my return, is required to take a position on that question. There is no answer to that question. So there's really no getting around the fact that someone filing under 932 has to take a position. And so, let's say you are a taxpayer who takes the position that you're a bona fide Virgin Islands resident. Maybe you take it because you've lived in St. Thomas your whole life, and you've never left the territory. Maybe you take it because you have a business there and a home there, and you want to get economic development benefits that you can only get if you're a resident. It doesn't matter why you take it. You have to take a position, and you have to file under one of these provisions. And if you take the position that you are a bona fide resident, you cannot file under 932A, because you would be contradicting the position that you are taking. It would be improper for you to file under 932A in those circumstances, which leaves only one other option, which is to file under 932C. And that means, I think, that there's no getting around the fact that if you take the position that you're a Virgin Islands resident, you are required by federal statute to file under 932C. You might be wrong. Counselor, I think you faithfully recited the statute, but that's a risk every taxpayer takes on every deduction and everything they do on every return dealing with the IRS. And of course, if the IRS is not substantially justified, you can get attorney's fees from them now under a couple of statutes. And you probably know the tax code, the federal tax code. And so if they come after you, and you really were there, like you say, a lifelong resident right there in the country, you've got those kind of remedies too. Well, sure, you have. Remember, all we're talking about is the statute of limitations. The statute contemplates expressly, maybe not expressly, it contemplates the possibility that someone filing under 932C could be wrong without vitiating the statute of limitations. And let me explain to you why. 932C2 governs where you file, right? So you file with the Virgin Islands if you're a bona fide resident. 932C4 answers the equally important question of who you owe money to if you file under 932C. And what it says is you don't owe the federal government any money if you meet three tests, having filed under 932C2. One, you have to meet all the taxes of the Virgin Islands. Mr. Ewing, your time's expired. May I finish my thought, your honor? If you can do it very rapidly. I will, your honor. If you meet three tests, you have to report all your income, you have to report all the sources of your income, and you have to be a bona fide Virgin Islands resident. If it were true that the only people who were required to file under 932C2 were bona fide Virgin Islands residents, 932C4A2, is that right? C4A, sorry. The requirement that you're a Virgin Islands resident in the C4 would be surplus. There would be no reason to have it in the statute. And for that reason, your honor, we think the statute properly interpreted requires the result that the current concurring opinion reached. Thank you.  Thank you, your honor. If you need another minute or two, you can take it since the other side got extended a bit. Thank you so much. Counsel, before you proceed, would you answer a question for me? Would you address the contention that the admissions that the commissioners made in this case distinguish it from the 11 circuits holding in Sanders? Sure, of course. And I will also point out that we've detailed our response to that in our reply brief at 44 to 47. But to summarize what we said in our reply brief, number one, the 11 circuit knew that the commissioner had examination authority over Virgin Island returns. The tax court had made a finding. We hadn't challenged it during oral argument. The court recognized that the IRS audited returns about the Virgin Islands. It just had not actively audited such returns prior to 2004 when it uncovered the scheme. But faced the opinion itself, the court dropped a footnote noting that the service challenges returns filed at the Virgin Islands under 932C4 as long as the statute of limitations was open. The 11 circuit did not assume that Virgin Island returns were completely hidden and accessible by the commissioner. The Virgin Islands had intervened in that case, filed briefs and argued in that case and they had detailed in their briefs exactly how much information was shared between the two different taxing authorities. And the opinion itself noted that the Virgin Islands and the IRS have an interrelated tax system. And finally, the description of the 2007 working arrangement, the new working arrangement that the Virgin Islands and the IRS entered into that year is exactly the same as the description of this case, which accurately reflects what the Virgin Islands agreed to as well as Treasury's contemporaneous understanding of what the Virgin Islands agreed to. And we set that out in our required brief, page 26 through 29. The key is all these points that they make about admissions and not admissions, none of that was relevant to the analysis of the 11 circuit. They relied on the text and structure of 932 as well as the longstanding principle that federal filing requirements must be meticulously complied with. And that is one of the problems with the concurring opinion. It is wrong for three reasons. One, it conflicts with the express language in 932A2, which requires that a return be filed with both the IRS and the Virgin Islands. It conflicts with the four circuits that I mentioned before that have addressed dual file requirements and it conflicts with that longstanding Supreme Court rule about the need for meticulous compliance. With regard to the regulation that counsel for the copies cited, it is perspective only as this court recognized in its earlier copy opinion, I believe it was in footnote one, and any reliance on congressional intent is misplaced because the clearest expression of congressional intent is, of course, in the language and the structure of 932, which again expressly requires the filing of the return with the IRS. We've also explained in a reply brief on page 13 how the athletes ignore Congress's concern that the Virgin Islands is being used as a tax haven. And that's why Congress amended the code in 2004 to shut down this particular transaction. Finally, the court asked about the residency trial in Sanders. There had been a residency trial in the tax court and the government appealed it because we felt the court had not applied the factors correctly and the 11th Circuit addressed two issues. One, it addressed the statute of limitations arguments that the Virgin Islands inserted relying on a good faith exception to 932A2 for taxpayers that take the position that the Virgin Islands reliance on the cover over documents. The court rejected both of those arguments. It also rejected the tax court's application of the residency test and remanded it for a new trial on residency. The court has any further questions, I would love to answer them. Otherwise, we request that the tax court's decision be reversed and be remanded for a trial on residency as the 11th Circuit did in Sanders. Thank you. I think that's an improvement that's going to have to happen to the software is that it automatically comes on when you start talking. It's just unnatural to look for that little mic to unmute it. I apologize. I was simply saying to all of you, we appreciate as a court your participation this morning and the oral argument you provided to us and the briefing that's been submitted in the case and we'll take it under advisement. Counsel may be excused. Thank you.